THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
CHARLES HENDRICK, PLAINTIFF IN ERROR.

Argued July 3, 1917—Decided March 4, 1918.

On writ of error to the Supreme Court, in which court the
following *per curiam* was filed:

"The return to the writ of error as printed in the state of
the case contains no copy of the allegation upon which the
defendant was tried. Both parties, however, admit that the
charge laid in it was a violation of section 184 of the Crimes
act. That section provides that "Any consignee, factor, bailee,
agent or servant entrusted with the care of any personal prop-
erty, or with the collection or care of any moneys, who shall
fraudulently take or convert the same, or the proceeds of the
sale of the same, or any part thereof, to his own use    *    *    *
shall be guilty of a misdemeanor." The trial in the special
sessions resulted in the conviction of the defendant, and he
now appeals.

"The case made by the state was that the defendant went
to the store of one Meyer Marx, on the Boardwalk, in Atlantic
City, and, after trying on two pairs of shoes, ordered one of
·the pairs to be sent to his office. Pursuant to this instruction,
a boy in the employ of Marx carried these shoes to the de-
fendant's office; and, upon his arrival there, the latter sent
·the boy back to the store to bring the other pair of shoes which
he had tried on and three pairs of hose. These articles the
boy brought back in due course. The contention on the part
of the state was, that when the defendant originally ordered
one pair of these shoes to be sent to his office, and also when
he sent the boy back for the other pair of shoes and the three
pairs of hose, he had no intention of paying for any of the
articles, and that, on the contrary, his purpose was, in case
they should be delivered to him, to fraudulently convert them
to his own use, and that he carried this purpose into execution.

The state called witnesses in support of its contention. The defendant submitted no evidence to controvert that produced on the part of the state. His claim in the trial court, and before us, was and is that the goods were delivered to him by the employe of Marx, on approval; that the title thereto passed to him by the delivery; and that, consequently, there could not have been a wrongful appropriation of them.

"The trouble with the contention of the defendant is that the character of the delivery, whether on approval or not, was entirely immaterial, if his preconceived purpose was not to pay for them, but, on the contrary, to fraudulently convert them to his own use if they should once be put in his possession. Whether such flagitious intent existed or not was a fact to be determined by the trial court. That fact was found against the defendant, and there was ample evidence to support the finding. The contention of the defendant, therefore, that the conviction against him must be reversed because the title of the property passed to him by delivery cannot prevail.

"It appears that, before the trial, there had been a preliminary hearing of the matter before a justice of the peace, and the defendant now complains of the ruling of the trial court with relation to testimony submitted at that hearing. The matter arose in this way: One of the witnesses produced by the state, a salesman in Marx's employ, testified that the articles above specified were to be delivered to the defendant C. O. D., and that the messenger boy who carried them to the defendant was instructed to so deliver them. On his cross-examination the salesman was asked the following question: 'You testified at a hearing in this matter, did you not, before Judge Sontheimer?' (the justice of the peace). The answer was: 'I did, sir.' Then followed this question: 'Did you testify that these goods were delivered C. O. D. at that hearing or not?' The question was objected to and excluded. The defendant claims that the question was proper, for the reason that it tended to impeach the credibility of the witness. We are unable to perceive how it had any relevancy for that purpose. If the witness had answered the question in the

affirmative, the fact that his testimony given on the trial corresponded with that given by him on an earlier occasion clearly could not affect his credibility as a witness. If he did not testify at the hearing before the magistrate that the goods were so delivered, the natural inference is that he was not interrogated upon the matter. If the defendant had desired to attack the credit of the witness by showing that his testimony before the justice was contradictory of that given by him at the trial, he should have been asked whether he did not on the earlier occasion testify that the goods were not delivered C. O. D. The rule upon this subject is elementary.

"It is next contended that it was error to admit in evidence a paper slip offered on behalf of the state, which read as follows:

" 'September 11, 1915.

" 'Dr. Hendrick, 395 Boardwalk.

" 'Marx's Footwear Shop, 1511 Boardwalk.

| | |
|---|---|
| " '1 pair pat. cloth top, | $7.50 |
| " '1 pair gla. kid, | 7.00 |
| " '3 pair hose, | 1.00 |
| | $15.50 |

" 'C. O. D.'

"On the back of the paper, at the suggestion of the defendant, the messenger boy wrote the following: 'Rec'd from Marx's Footwear Shop 2 pair shoes, 3 pair hose, on approval,' and this was signed by the defendant. The argument in support of the inadmissibility of this paper is that only what was written upon the back thereof was evidential, and that this writing showed that the goods were delivered on approval and not C. O. D. Assuming for the moment that the character of the delivery was material, we think the document was competent for the purpose of showing that the messenger boy had no authority to represent Mr. Marx in changing the character of the delivery. The paper showed that his authority was to deliver C. O. D., and the boy's agency was expressly limited by the writing. In changing the character of

the delivery at the defendant's suggestion, the boy overstepped the limits of his agency, and his act did not bind Marx. But the paper, we think, even if it was legally objectionable as a piece of evidence, had no relevancy with relation to the matter in issue, and its admission could not have harmed the defendant. As we have already pointed out, the question involved was whether or not the defendant in ordering these goods had no intention to pay for them, but purposed, in the event of their being delivered to him, to fraudulently convert them to his own use. And if this was the scheme of the defendant, it is quite immaterial, as we have already indicated, what the character of the delivery to him was.

"It is further contended that the trial court erred in refusing to permit the defendant to show that about a year prior to the transaction under consideration Marx had sold him a pair of shoes, which, as he represented, were made to the defendant's order, but which, in fact, were taken out of stock and were worth considerably less than a 'made to order' pair would have been. It is difficult to understand on what theory the defendant considered this testimony relevant. If he had been defrauded in the transaction, as he claims to have been, he would hardly have been justified in breaking into the store of Marx and robbing the till of sufficient to compensate him for the loss which he had sustained, and it seems to us equally plain that he could not recompense himself by fraudulently obtaining possession of property belonging to Marx and appropriating it to his own use.

"It is lastly contended that the sentence pronounced by the court was without legal justification. It was as follows: 'The court doth order and adjudge that Charles Hendrick be committed to the care and custody of the probation officer for a period of three years, and that he report weekly and pay said probation officer the sum of one dollar a week during that period, and, as a further condition, that said Charles Hendrick make restitution in the sum of $15.50 to Meyer Marx, the complaining witness. That restitution be made one week from to-day, or you will be brought into court and a jail sentence will be imposed.' We think this sentence was

one beyond the power of the court to impose. The threat that, unless restitution should be made within a week from the day of pronouncing sentence, the defendant would be brought into court and a jail sentence imposed upon him, does not trouble us, for it is no part of the sentence, and unless and until the threat was carried out it did not affect the defendant. The trouble with the sentence is with the command to make restitution to the complaining witness. The criminal courts of the state are not to be used as collection agencies for debts due or for damages sustained. The method to be pursued by Mr. Marx for the recovery of his claim aganist the defendant is by an action in one of our civil tribunals. As the condition cited is an integral part of the sentence, it cannot be expunged therefrom as surplusage. The result, therefore, is that the conviction must be set aside. But this will not necessitate a retrial of the case. Section 144 of the Criminal Procedure act provides that 'Whenever a final judgment in any criminal case shall be reversed upon a writ of error on account of error in the sentence, the court in which such reversal was had may render such judgment therein as should have been rendered, or may remand the case for that purpose to the court before which the conviction was had.' We incline to think that more exact justice will be done in the present case by sending it back to the trial court, in order that sentence may be there pronounced, than if we attempted to fix the penalty ourselves. The case will, therefore, be remanded for that purpose to the special sessions of Atlantic county."

For the plaintiff in error, *Charles Hendrick, pro se.*

For the state, *Charles S. Moore*, prosecutor of the pleas, and *William Elmer Brown, Jr.*, assistant prosecutor of the pleas.

PER CURIAM.

The defendant was convicted in the Atlantic special sessions of fraudulent conversion of goods as consignee, under section 184 of the Crimes act (*Comp. Stat., p.* 1799), and the

sentence of the court was that he be committed to the custody of the probation officer for three years, to whom he should report weekly and pay the sum of one dollar a week; and further, that he make restitution to the complaining witness of the sum of $15.50, the value of the goods converted, &c. From this judgment defendant appealed to the Supreme Court, where it was reversed on account of error in the sentence.

The Supreme Court found no trial errors, but in its opinion said that the conviction must be set aside because the sentence imposed went beyond the power of the court, and observed that that would not necessitate a retrial of the case, referring to section 144 of the Criminal Procedure act (*Comp. Stat., p.* 1867), which provides that whenever final judgment in any criminal court shall be reversed on account of error in the sentence, the court in which such reversal is had may render such judgment as should have been rendered or remand the case for that purpose to the court in which the conviction occurred.

In the judgment entered in the Supreme Court it was ordered that the *conviction* of the plaintiff in error be affirmed and that the *judgment* be reversed, because of error in the sentence. There was no remand of the case to the court before which the conviction was had for the purpose of rendering proper judgment therein. However, the judgment of the special sessions was reversed as required by existing practice recognized by section 144 of the Criminal Procedure act.

In this state of the record the defendant sued out a writ of error from this court directed to the Supreme Court, reciting that in the judgment of that court manifest error had intervened to the great damage of the plaintiff in error; and he brings up, by way of return to this writ, the judgment of the Supreme Court reversing that of the Atlantic special sessions for the purpose of correction of the sentence.

While, by section 134 of the Criminal Procedure act (*Comp. Stat., p.* 1862), it is provided that writs of error in all criminal cases shall be writs of right and issue of course, yet this is not all there is of law upon that subject. The Supreme

Court held in *State* v. *Holmes,* 36 *N. J. L.* 62, 66, that the act to regulate writs of error extends to all causes, civil or criminal, unless otherwise specified. By section 4 of the present Errors act (*Comp. Stat.; p.* 2208), it is provided that any person who may be damnified or aggrieved by any judgment rendered in the Supreme Court may sue forth a writ of error to that court to be brought before the Court of Errors and Appeals. The statute does not give an appeal to one who is not aggrieved by a given judgment.

The plaintiff in error having, in the Supreme Court, secured a reversal of the judgment of the special sessions, he should have also secured the remand of the case to the latter tribunal, when, upon proper sentence being imposed, he could carry the case again to the Supreme Court on error, where, doubtless, judgment affirming that of the special sessions would be entered against him, and if he still considered himself damnified or aggrieved he could then by writ of error bring the judgment of the Supreme Court to this court for review. In other words, a defendant in a criminal cause, who has carried his conviction from the trial court to the Supreme Court on error, may only appeal to this court by writ of error to review a judgment in the Supreme Court which would result in putting proceedings *en train* to have the sentence of the trial court carried out, that is, from a judgment of affirmance; and it is equally obvious that a criminal defendant, whose judgment of conviction has been reversed in the Supreme Court, no matter for what cause or to what extent, cannot sue out a writ of error from this court to review such judgment, that is, a judgment of reversal.

These views lead to the conclusion that the writ of error presently before us, seeking to review the judgment of reversal in the Supreme Court, was improvidently issued, and must, therefore, be dismissed.

As to whether under section 144 of the Criminal Procedure act a court of review can affirm a conviction while reversing a judgment, we express no opinion.