STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GEORGE W. GREGORY, PLAINTIFF IN ERROR.

Argued January 19, 1938—Decided June 6, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the plaintiff in error, *Kalisch & Kalisch* (*Isidor Kalisch,* of counsel).

For the defendant in error, *William A. Wachenfeld,* prosecutor of the Pleas, and *Joseph E. Conlon,* first assistant.

PER CURIAM.

The plaintiff in error, hereinafter referred to as the defendant, was convicted on an indictment charging that as agent entrusted with the collection of money, he fraudently took and converted the same to his own use in the amount of $397.50 the property of one Wilson.

At the trial the evidence, while in sharp dispute for the most part, nevertheless tended to show as a jury question, among other things, the following: That the defendant was a member of the bar of this state, and that Wilson was an old man who had been injured in an automobile accident, and who entered into an agreement with the defendant, whereby the latter was given the exclusive right to take all legal steps to enforce Wilson's claim for damages resulting to him in the accident, and in consideration of the services rendered or to be rendered by the defendant, it was agreed that the defendant should be paid one-half of any sum collected, whether by court action or settlement, Wilson to pay hospitalization and doctors' bills; that defendant procured a settlement of such damages in the sum of $1,445, payment being made by a draft for $325 paid to the hospital and $1,120 by a draft payable to the defendant; that defendant had no bank account, and that the latter draft was delivered by him to William Herda Smith, a Newark lawyer, with the understanding and agreement that Smith would have it cashed immediately; that it was not cashed immediately, but on the contrary, the proceeds of the draft finally entered Smith's personal account at the bank (Smith testifying that he was to deposit it and the money was to be given as and when defendant requested it).

Considerable testimony was taken tending to show, among other things, that from time to time, upon repeated demands made by defendant upon Smith, the defendant received the sum of $295; the evidence further tends to show, although this is in dispute, that further sums were paid by defendant for hospitalization or otherwise in partial discharge of his contract obligation with Wilson, and defendant testified in effect that there remained $288.50 due Wilson, and defendant further testified, and was to a certain extent corroborated, that relying upon his lien for services rendered, he made an offer of $300 to Wilson which the latter refused.

The case comes up on exceptions at the trial and also by specifications of causes for reversal pursuant to section 136 of the Criminal Procedure act.

Many points are argued, but in the view we take of the matter, it becomes necessary to consider only what we deem to be errors in respect to requests to charge, and what was said at the trial by the trial judge in dealing with such requests.

First: Defendant complains that the trial judge after charging the jury: "Has the state proved beyond a reasonable doubt that the defendant as agent for Wilson fraudulently converted to his own use any part of the $397.50 entrusted to him and belonging to him and belonging to Wilson?" thereafter erroneously refused to limit the jury's consideration of the alleged embezzlement to the time as limited by the indictment, when immediately requested so to do.

In this connection the record shows that, after the judge had charged as stated, defendant's counsel requested "that the date mentioned in the indictment be stated to the jury;" whereupon the court said, "you mean within the dates involved in the indictment?" to which counsel answered, "yes, sir." The court: "Well, perhaps I should say that."

Now we think that the court's impression that "he should say that" was correct. *State* v. *Lyon,* 45 *N. J. L.* 272. But instead of so doing, after a colloquy between the court and counsel, the court said, "well, I do not think in view of the fact that the jury will have the indictment before them in the

jury room, and I have instructed them, that they will be misled by that proposition."

It seems to us that that was not an adequate answer to the request. The mere fact that the jury had the indictment before them in the jury room was an insufficient basis upon which to assert that the jurymen would know to what extent their consideration of the facts testified to would be limited by the indictment, for that was a matter of law, and we think that the failure so to charge was harmful error.

Secondly: Defendant complains that the trial court erred in refusing to charge defendant's request as follows: "You are instructed that the mere failure of Gregory to pay over to his client, Wilson, the money in his, Gregory's hands, at a certain time, did not of itself constitute the offense of embezzlement," and complains also as to what the court said in response to that request.

Now we think that there was harmful error. We think that request was proper and should have been charged. *State* v. *Temple,* 63 *N. J. L.* 375. Instead of charging it the court denied the request and in its place charged the jury as follows:

"So the question presented itself to him [defendant] 'whose part of this money is going to be collected first, my client's part or my part.' In other words, his interest did not coincide with his client's. Now, to whom did he give preference? When a lawyer finds out that his interests do not coincide with his client, what is his duty? Is it his duty to go to his client and say to his client, these are the facts: I have put this check in Mr. Smith's hands and I cannot get the money; your money and my money is in there; I want my money and you want your money. If he is going out to get his money first, should he or should he not say to his client, you better try to get another lawyer to try to get your money, because I am going after mine? Did he do anything like that? I asked him questions on that subject and you probably remember it. He was collecting money. His part, we will say, or what we consider his part, and he took it all. He never went near his client. He did not go near his client and say 'I am collecting this money. We are in the same

boat. I have collected X dollars. Here is a part that comes
to you and a part that comes to me.' He did not do anything.
He took it all himself. Now, I call your attention to that
because it has a bearing upon the question of whether or not
Mr. Gregory was acting in good faith in the way he handled
this transaction, as he claimed he was. Was he playing the
part, gentlemen, of a lawyer performing his duty by his
client? You may consider whether he was or not."

The evidence tended to show that, as a matter of fact, the
defendant did "go near his client" several times, and did
explain the delay, and offered $300 which was refused and he
was told not to return, although defendant explained he
would, within a "couple of days" return and make full
settlement.

Moreover the language of the instruction was not a legal
substitute for the language of the request, since it conveyed
to the jury just the opposite conclusion to that intended by
the request. Certainly mere delay on Smith's part, or the
mere neglect and failure to pay, could not under the statute
create criminal responsibility on the part of the defendant.
The instruction seems to ignore defendant's contention that
he had a lien upon the money for his services and was not
obliged to split each payment into parts, reserving to him-
self one part and giving the other part to his client, and yet,
from the judge's remarks, it would seem that the defendant
was held to a legal accountability which was unwarranted, for
until the point was reached that the defendant intentionally
converted money to which he was not entitled, he could not
have been held to have committed embezzlement. It also
seems that under the judge's instructions he left it open to
the jury to find the defendant guilty, if they concluded that
as a lawyer he had not performed his duty by his client. The
real question in the case was whether he fraudulently con-
verted to his own use moneys of his client, and that of course
depended on the intent of the defendant. *State* v. *Temple,*
63 *N. J. L.* 375.

We therefore conclude that there must be a reversal and
a *venire de novo* awarded, and it is so ordered.