RICHARD COLEMAN, AN EMANCIPATED INFANT, SUING BY HIS NEXT FRIEND, WILLIAM H. COLEMAN, PLAINTIFF-APPELLEE, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT, A NEW JERSEY CORPORATION, AND PHILIP J. LAMSON, DEFENDANTS-APPELLANTS.

Argued May 3, 1938—Decided June 11, 1938.

Before Brogan, Chief Justice, and Justices Bodine and Heher.

For the defendants-appellants, *Henry J. Fryling, Henry J. Sorenson* and *William H. Speer.*

For the plaintiff-appellee, *John W. Lyness* and *Edmund A. Hayes.*

Bodine, J. The plaintiff, a Western Union messenger boy, on the evening of December 3d, 1936, was riding his bicycle on West Front street, Plainfield, on his way to Dunellen. The boy claimed to have been struck by the defendant's bus. Some of the witnesses for the defendant testified that the boy was hitching on to the right side of the bus at about the middle, when he fell and suffered serious injury. The principal ground urged for reversal is that the trial judge improperly instructed the jury as follows: "If you find that any witness has varied in his or her testimony and has told conflicting stories, you can, if you see fit, discard that person's testimony as unworthy of belief, either because of the lack of veracity or the lack of ability to know what the truth really

was, or whatever you may decide, and discard that altogether, but it is entirely for you to say."

At the close of the charge, counsel for defendant addressed the court as follows: "I take exception to that portion of your honor's charge wherein you charged that if the jury found that any witness varies in his testimony, you can, if you see fit, discard the testimony of that witness and throw it out entirely."

It was said in *Lyon* v. *Fabricant,* 113 *N. J. L.* 62 (at *p.* 63) : "At the conclusion of the charge, and usually after the jury have gone out, although the practice varies locally, counsel dissenting from any of the instructions given to the jury formulates and states his exceptions thereto, reproducing as nearly as may be the language excepted to. This, as has many times been pointed out, is to notify the trial judge that his ruling is to be made a ground of appeal, and so that he may revise it if desired. See, for example, *Kargman* v. *Carlo,* 85 *N. J. L.* 632, 636."

It would, therefore, seem if legal error was committed by the trial court in the instructions given that an exception was properly taken. The charge in effect was, that if any witness had varied his testimony and told conflicting stories the jury could disregard that person's testimony as unworthy of belief. This is not the true rule of law. It is not every variation and every conflict that entitles the jury to reject the whole testimony.

"The maxim *falsus in uno, falsus in omnibus,* is not a mandatory rule of evidence, but is rather a permissible inference that the jury may or may not draw when convinced that an attempt has been made to mislead them in some material respect. *Addis* v. *Rushmore,* 74 *N. J. L.* 650. It is a rule by which the probative force of testimony may be weighed, and which rule does not rise to the degree of an inflexible legal principle to be applied in all cases. It is to be observed that it is in this light that the trial judge left it to the jury to determine to what extent it would accept or reject any or all of the testimony of the defendant, if the jury believed he

had testified willfully false, in relation to the material fact—the speed of the car." *State* v. *Dugan,* 84 *Id.* 603, 606; *affirmed,* 85 *Id.* 730.

"The cases seem to be in harmony on the point that the application of the rule *'falsus in uno, falsus in omnibus'* can only be properly invoked when the false testimony or statement is willfully or knowingly or intentionally given or made concerning a material fact in the case; and that an instruction to a jury that if a witness has made a false statement or testified falsely, without qualifying it by willfully, knowingly or intentionally relating to a material fact in the case, the jury may reject all or any portion of the testimony given by such witness, is erroneous. *Ducharme* v. *Holyoke Street Railway Co.,* 203 *Mass.* 384; 89 *N. E. Rep.* 561; *Chicago and S. L. Railroad Co.* v. *Kline,* 77 *Id.* 229; *Pauton* v. *People,* 114 *Ill.* 505; 2 *N. E. Rep.* 411; *Moett* v. *People,* 85 *N. Y.* 373; *Childs* v. *State,* 76 *Ala.* 93; *Prater* v. *State,* 107 *Id.* 26; *Smith* v. *State,* 75 *So. Rep.* 627." *State* v. *Samuels,* 92 *N. J. L.* 131, 133. See, also, *State* v. *Guida,* 118 *Id.* 289.

It is quite possible for a witness to vary his testimony and to tell somewhat conflicting stories and still not be guilty of giving willfully, knowingly or intentionally false testimony as to a material fact. The driver of the bus, one of the witnesses called in behalf of the defendant, stated that he stopped within one hundred feet, and when he got out and looked back the boy was about one hundred feet from the rear of the bus. Later on he put the boy forty feet behind the bus. Other witnesses testified in much the same manner. It seldom happens that a witness on cross-examination does not, to some extent, vary the testimony given on direct examination. There is then a conflict of testimony. That some variations may be immaterial is obvious to all. Because there are immaterial variations the jury cannot disregard the whole testimony as unworthy of belief.

In *State* v. *Samuels, supra,* it was also said: "Professor Wigmore, in discussing the maxim, *'falsus in uno, falsus in*

*omnibus,'* in volume 2, paragraph 1013, of his excellent trea-
tise on the law of evidence says: "The notion behind the
maxim is that though a person may err in memory or obser-
vation or skill upon one point, and yet be competent upon
others, yet a person who once deliberately mis-states, one who
goes contrary to his own knowledge or belief, is equally likely
to do the same thing repeatedly, and is not to be reckoned with
at all, hence it is essential to the application of the maxim that
there should have been a conscious falsehood.' On this same
subject the text in 40 *Cyc.* 2588, 2589, reads as follows: "The
fact that a witness has sworn falsely to a material. fact does
not authorize the disregarding of the rest of his testimony
where the falsehood is due to mistake and not to willfulness.
The mere falsity of the statement does not warrant an impu-
tation of willful perjury where it might reasonably have
been the result of a mistake.' "

It seems clear that since this record does show immaterial
variations and conflicts in the testimony of the defendant's
witnesses that the charge was highly prejudicial, because in
effect it was an instruction to the jury that they were entitled
to do as they chose with the evidence, if they believed there
were variations and conflicts in the testimony of witnesses.
The instruction in effect was not to decide the case upon all
the evidence adduced if the jury found that any witness had
varied his statement in any of his testimony. The jury must
most certainly have been confused as to how they could arrive
at a true verdict according to the evidence, if they could reject
the whole testimony of a witness because of some immaterial
variation in his testimony.

The judgment appealed from is reversed, to the end that
there may be a *venire de novo.*