THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GILBERT RUTH, PLAINTIFF IN ERROR.

Submitted October 1, 1946—Decided July 29, 1947.

Before CASE, CHIEF JUSTICE, and Justices HEHER and COLIE.

For the plaintiff in error, *Louis Steisel (Elsie L. White,* of counsel).

For the state, *Duane E. Minard, Jr.,* Prosecutor of the Pleas, and *C. William Caruso,* Assistant Prosecutor.

The opinion of the court was delivered by

HEHER, J. Here, there was a conviction, after a jury trial, upon an indictment charging the fraudulent taking and conversion by plaintiff in error of four die heads entrusted to his care, as bailee of three co-partners trading as the "B & S Screw Machine Products," in violation of *R. S.* 2:124–11; and the judgment has been removed into this court by writ of error. The entire record of the proceedings had upon the trial is also here under *R. S.* 2:195–16.

It is assigned for error and specified as causes for reversal (1) that there was error in the denial of the accused's motion for a directed verdict of acquittal at the close of the state's case; and (2) that the verdict was contrary to the weight of the evidence. Neither point is well made.

It is conceded that the die heads in question were the property of the B & S Company, and that they were turned over to the accused by that company for delivery to another. The state adduced evidence that they were entrusted to the accused by the B & S Company for delivery to the Knickerbocker Machine Shop, a partnership engaged in work incident to the manufacture of shell bases under contract with the B & S Company, in order to increase production under that contract. The latter company had undertaken the manufacture of shell bases under a war defense contract with the Excel Foundry. But the accused testified that he received the die heads from the B & S Company for delivery to the Excel Foundry; and the contention is that the proofs conclusively demonstrate that, in receiving the die heads, the accused was the agent and bailee of the Excel Foundry and not of the B & S Company, and therefore the charge laid in the indictment is not sustained by the proofs. We have the contrary view. The evidence raised a jury question on this issue; and the finding of the jury was not against the weight of the evidence.

The accused was a "broker" engaged in negotiating contracts on a commission basis for the manufacture of shell bases and such and the expediting of the work incident thereto; and he had borne this relationship to the B & S Company. He admitted that, upon receiving the die heads, he

organized a corporation and established a machine shop for the doing of the identical work in which the B & S Company and the Knickerbocker Company were engaged, and used the die heads in the conduct of that business until they were forcibly taken from him under a search warrant issued at the instance of the B & S Company. He said he took that course at the request of Excel Foundry, and that he "did not know who" the die heads "belonged to; I never was interested in knowing." Yet in February preceding, at the direction of the B & S Company, he delivered two of its die heads to the Knickerbocker Company under similar circumstances. And he also testified that his interest in the die heads in question was "merely to facilitate the manufacture of the 20 millimeter shells under the production of Excel Company." Again, he admitted to the police officer who executed the search warrant that he knew these instruments were the property of the B & S Company. And his testimony that they were in a state of disrepair when he received them, and he was obliged to retain them for repairs, was discredited.

But it is said that, even so, there was no evidence of a fraudulent conversion of the chattels, in that no time was fixed "within which the defendant was to surrender the die heads to anyone," and "no limitation placed upon his use of the die heads," and in such circumstances fraudulent intent could not be inferred without a demand for the return of the property and a refusal of compliance. The cases of *Fitzgerald* v. *State*, 50 *N. J. L.* 475, and *State* v. *Deutsch*, 77 *Id.* 292, are cited, among others. The point is not well taken.

Fraudulent conversion may well be inferable from the refusal to comply with such a demand; but it is not the only token of a fraudulent intent. Where, as here, the chattels were entrusted to the accused for immediate delivery to a third person, the inference of a fraudulent conversion is deducible from the failure to make delivery of the property to the third person and its conversion to his own use, without more. There is no need, in the proof of a fraudulent design, to show a demand for the return of the property which would not have been in the possession of the bailee if he had performed the trust. In such circumstances, its conversion to

the bailee's own use alone sustains the inference of a fraudulent motive. The case is not in the general category of cases where "the time for the return of the funds collected is indefinite or not fixed or which is at the pleasure of the agent or servant," and "a demand, or other evidence of a fraudulent intent to convert, may be necessary to put the defendant in a position of having fraudulently converted the money to his own use." *State* v. *Reynolds,* 65 *N. J. L.* 424, 429. Compare *State* v. *Woodward,* 99 *Id.* 49.

The jury were convinced of the accused's guilt beyond a reasonable doubt; and the finding cannot be set aside on error as against the weight of the evidence under *R. S.* 2:195–16, unless it clearly appears that it was the product of mistake, passion, prejudice, or partiality. *State* v. *Woodworth,* 121 *N. J. L.* 78.

Judgment affirmed.