70 N.J. Super. 322 (1961)
175 A.2d 443
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH FRANCIS HUBBS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1961.
Decided November 28, 1961.
*324 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Seymour Margulies argued the cause for defendant-appellant (Mr. Philip J. Blanda, Jr., attorney; Messrs. Levy, Lemken & Margulies, of counsel and on the brief).
Mr. William D. Danberry, Middlesex County Assistant Prosecutor, argued the cause for plaintiff-respondent (Mr. Edward J. Dolan, Middlesex County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
These are consolidated appeals from (1) a sentence of defendant by the Middlesex County Court to imprisonment upon a jury conviction of embezzlement contrary to N.J.S. 2A:102-5; and (2) the denial of defendant's motion for a new trial and in arrest of judgment and from an earlier municipal court order which bound defendant over for grand jury action on a different charge.
Defendant and the complaining witness, Margaret A. Rocky (Mrs. Margaret A. Williams at the time of trial), met in January 1953 while she was a student nurse and *325 he a part-time orderly at St. Peter's Hospital in New Brunswick. He then and thereafter also held a full-time job with E.R. Squibb & Company. Miss Rocky graduated from the training course in September 1953, but continued to work as a graduate nurse at the hospital except for a short period during which she was engaged as an office nurse for a physician.
Defendant and Miss Rocky began seeing each other steadily in January 1954 and were formally betrothed Christmas Day, 1954. The engagement was destined to be a long one, but without the normal happy ending. Miss Rocky testified on behalf of the State that early in 1954, during discussion of her prospective education at college, for which she had been awarded a partial scholarship, defendant suggested that she "ought to start saving" about $25 per week. At the time she was being paid by the hospital at about the rate of $50 per week. Under the suggested plan, accordingly, she began in March 1954 to deliver $50 every two weeks to defendant, who was to hold it for her in her "fund." After their decision to marry, the college plans were abandoned and the fund was to be for her marriage and future.
While employed by the hospital, so she testified, she generally gave defendant her pay checks to cash. He would retain $50 and give her the balance. Sometimes she cashed the checks herself and gave defendant the $50 in cash. For a six-month period, when she was paid weekly as an office nurse, and from June or July 1958, when she became a private duty nurse and was paid directly by the patients, the frequency of payments and the amounts varied, but the pattern of turning money over to defendant regularly for him to hold for her remained the same. In addition, she gave him a $700 check that she received in settlement of a personal injury claim and loaned him $300, which she borrowed from a bank, at his insistence, to pay taxes on his property. Both the $700 and the $300 (upon repayment) were supposed to be added to her fund.
*326 She occasionally requested an accounting, but defendant would give her none except to say he had the money in a bank, without identifying it. She grew increasingly uneasy about defendant's constant refusal to set a wedding date and his unending excuses for delay. Finally, on July 31, 1959, she insistently demanded he fix a wedding date and return her money, but defendant refused to do either, saying, as to the marriage, that he had "some problems," and, as to the money, "things will straighten out. Don't worry about it." Later, in August 1959, he said that if she would "keep quiet" he would return $5,000 of the money, but that she would have to wait for it. This was unsatisfactory to her. Her records indicated that by October 29, 1958, she had turned over to him a total of $7,076.
In defense, defendant categorically denied retaining any of Miss Rocky's money or maintaining a savings fund for her. He admitted cashing her checks, but said that he did it only as a convenience for her. He would either cash the checks and remit the full amount to her, or would pay her out of his cash on hand and then cash the checks to reimburse himself.
Other evidence in the case included most of the cashed checks with defendant's indorsements, and testimony going to the credibility of the complaining witness and the defendant and as to the relative affluence of the defendant, not necessary to be here detailed.

I.
We deal first with defendant's contention that the State was estopped from procuring an indictment and conviction of him for embezzlement because the original complaint against him was for obtaining money by false pretenses.
Miss Rocky did not "keep quiet" about her grievances against defendant. On September 1, 1959 she swore out a complaint against her former fiance in which she alleged that he "knowingly and designedly by means of false promises, *327 statements and representations did obtain $8888.00 in lawful United States currency from Margaret A. Rocky, with intent to cheat and defraud the said Margaret A. Rocky contrary to R.S. 2A:111-1." A warrant issued, and on September 17, 1959 there was a preliminary hearing. The magistrate found probable cause and held the defendant in $10,000 bail for the Middlesex County grand jury. That body returned an indictment, not for obtaining money under false pretenses, but charging that the defendant, "being the bailee and agent of Margaret A. Rocky, unlawfully did embezzle and fraudulently take, receive, retain and appropriate to his own use money to the amount of $5000.00, belonging to the said Margaret A. Rocky, with intent to defraud her thereof, contrary to the provisions of N.J.S. 2A:102-5."
After a six-day trial, the jury on September 27, 1960 brought in a verdict of guilty and the court imposed sentence on October 14, 1960. Subsequently, defendant moved for a new trial and in arrest of judgment, asserting as ground therefor that the crimes charged in the initial complaint and in the indictment were separate, distinct, and repugnant in fact and law, and that therefore the interests of justice required that the judgment be vacated. In his notice of appeal from the denial of this motion, defendant included an appeal from the magistrate's order of September 17, 1959 binding him over to the grand jury. Defendant is obviously not now aggrieved by that action. His substantive complaint is that the State should be held equitably estopped from prosecuting the charge of embezzlement, having first proceeded against him on the factually inconsistent theory of false pretenses.
It may be first observed that the argument is tardy. R.R. 3:5-5(b) (2) requires that "defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation [other than lack of jurisdiction or failure to charge an offense] must be raised by motion before trial" and provides that failure so to raise any such *328 objection or defense then available constitutes a waiver of the objection, relief of which may be granted for cause shown. No motion addressed to this point was made before trial, and no such cause for relief from the consequent waiver was submitted to the trial court; moreover, we perceive none.
In any case, the point urged is without merit. Defendant has had a fair trial on the charge of embezzlement. In defending that charge he has in no way been prejudiced by the inception of the proceedings against him before the magistrate on the complaint of false pretenses, that charge having been completely superseded by the indictment for embezzlement. None of the cases cited by defendant in this connection are at all apposite. The fact that the State's case "savors," as defendant puts it, of false pretenses, obviously cannot derogate from the regularity of a verdict of guilt on the trial of an indictment for embezzlement if that charge has been sustained by the proofs, whatever other crime they may also savor of. Per contra, of course, were the proofs compatible only with guilt of a different crime from that being tried. State v. Shelbrick, 33 N.J. Super. 7 (App. Div. 1954).

II.
Defendant attacks the sufficiency of the proofs to withstand his motions for dismissal, particularly at the close of the State's case, on both legal and factual grounds.
He first stresses that the evidence was circumstantial, pointing out, as is concededly correct, that mere failure by a trustee of funds to return the money entrusted, without more, does not constitute embezzlement. State v. Gregory, 120 N.J.L. 326 (Sup. Ct. 1938). The proof must justify the inference of fraudulent conversion of the funds. Defendant urges the so-called "dual hypothesis" test in relation to a case erected solely upon circumstantial evidence  that the proofs must not only be consistent with guilt but exclude any rational theory of innocence. State v. Fox, *329 12 N.J. Super. 132 (App. Div. 1951). That rule, however, after a steady decline in status in recent years, has just been interred, and the Fox case overruled. State v. Fiorello, 36 N.J. 80 (1961). The rule now unequivocally approved (id., at p. 90) is that stated in State v. Graziani, 60 N.J. Super. 1, 13 (App. Div. 1959), affirmed o.b. 31 N.J. 538 (1960), as follows:
"The issue to be decided is * * * whether the evidence before the trial court, viewed in its entirety, and giving the State the benefit of all legitimate inferences therefrom, was such that the jury could properly find, beyond a reasonable doubt, that the defendants had [committed the crime] * * *."
See also State v. Dancyger, 29 N.J. 76, 84 (1959).
The substantive crime of embezzlement is characterized as criminal conversion. It is the intentional and fraudulent appropriation of the property or money of another by a person into whose hands it has lawfully come or to whom it has been entrusted. State v. Bobbins, 35 N.J. Super. 494, 497 (App. Div. 1955), affirmed o.b. 21 N.J. 338 (1956), appeal dismissed 352 U.S. 920, 77 S.Ct. 220, 1 L.Ed.2d 157 (1956). Defendant argues that there is no proof of his fraudulent appropriation of the money. We think there was ample basis for the jury to find that there was. In the first place, while mere failure to return money entrusted to one as agent or bailee does not ipso facto constitute guilt of embezzlement, it is nevertheless some evidence thereof so to fail upon demand rightfully made. Burnett v. State, 60 N.J.L. 255, 257 (Sup. Ct. 1897); State v. Ruth, 136 N.J.L. 63, 65 (Sup. Ct. 1947). There was here, moreover, not mere failure to account for or return the money upon demand, but failure under circumstances suggestive of fraudulent conversion. Defendant was furtive in failing to tell Miss Rocky where he had the money beyond talking about unnamed banks; and in informing her when they broke off in 1959 that if she would "keep quiet" he would return $5,000 but that she "would have to wait" even *330 for that. Clearly this justified an inference either that he no longer had the money, having in fraudulent breach of the trust used it for his own purposes, or that he intended to keep it for himself in fraud of the bailor's right to its return. During the period he was collecting the money from the young lady he was, significantly, buying and selling real estate, and in other situations of exigent need of money from time to time.
Defendant contends there was no proof he was Miss Rocky's agent or bailee in respect of the money, but merely her sweetheart. The argument is frivolous. Clearly the latter circumstance does not preclude the fact of agency or bailment, and the latter relationships in respect of the funds entrusted clearly emerge from the State's proofs.
It is also urged that there was a material variance between the indictment and the proofs in that the charge is embezzlement of $5,000 "in money" whereas the proofs were that defendant received checks, not money. In the same breath, however, defendant concedes there was some proof of delivery of money, but says the "real tenor" of the case involved checks. However, proof of criminal conversion of any portion of the money received will sustain a conviction. State v. Meeker, 72 N.J.L. 210, 213 (E. & A. 1905). Moreover, the evidence is that defendant cashed the checks for the complainant and by her direction retained a portion of the proceeds to keep for her. Clearly, he was being entrusted by Miss Rocky with the money he retained out of the cash proceeds of the checks. See State v. Redfield, 9 N.J. Misc. 751, 155 A. 757 (Sup. Ct. 1931), affirmed 108 N.J.L. 552 (E. & A. 1932).
Defendant urges that the State's proofs indicated that his fraudulent intent, if it existed at all, existed at the time he acquired possession of the money, thus negating the lawfulness of the coming into possession, an essential element of the crime of embezzlement, and precluding a conviction of that offense. There is some support for his legal argument if the factual premise be accepted as conclusively *331 established. 2 Wharton, Criminal Law and Procedure (1957), § 516, p. 194; Clark & Marshall, Crimes (1958), § 12.21, p. 808; Moore v. United States, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895). Cf. Champion v. Chicago Fire, etc., Co., 104 N.J.L. 554 (E. & A. 1928). But the decision in State v. Hendrick, 91 N.J.L. 336, 106 A. 894 (Sup. Ct. 1917), and certain language in State v. Geyer, 81 N.J.L. 591, 593 (E. & A. 1911) suggest that this has not necessarily been regarded as the law in New Jersey, and such a theory would have apparently precluded conviction in such continuing conversion cases as State v. Bobbins, supra. In any event, however, under the State's proofs in this case, while it is problematical as to the precise point in time when defendant's fraudulent intent arose, the evidence could support a jury finding that such intent did not exist when the agency first began or for some time thereafter, but that later, after substantial sums had been taken by defendant from Miss Rocky, the criminal conversions of the moneys previously received began. There is thus an evidential basis to sustain the conviction even on the legal assumption that embezzlement cannot inhere as to moneys fraudulently received in the first instance.
Upon oral argument of this case, defendant for the first time brought to the court's attention the fact that while the indictment charges a period of embezzlement from January 1, 1955 to June 30, 1959, the State's proofs indicated that the alleged demand by Miss Rocky did not occur until July 31, 1959. However, as indicated, the conversions could well be found to have antedated June 30, 1959. Moreover, it has long been settled that where, as here, time is not of the essence or a legal constituent of the crime charged, time need not be proved as precisely as laid in the indictment. 4 Wharton, op. cit., supra, § 1775, p. 580; 5 id. § 2062, pp. 210-11; State v. Calabrese, 99 N.J.L. 312 (Sup. Ct. 1924), affirmed o.b. 100 N.J.L. 412 (E. & A. 1924); State v. Witter, 33 N.J. Super. 1 (App. Div. 1954); State v. Johnson, 20 N.J. Super. 93 (App. Div. 1952). *332 There is no showing here that the variance, if there is one in fact, prejudiced the defendant in any way or that the dates were otherwise of material import. Cf. State v. Shapiro, 89 N.J.L. 319 (E. & A. 1916).

III.
Several errors are assigned with respect to the court's charge to the jury. There was, however, no objection to any portion of the charge as given or to the denial of any request. Therefore, no deficiency in the charge will affect the verdict unless there is a showing of "plain error" in the sense of the denial of substantial justice. R.R. 1:5-1(a).
Defendant complains that the court did not explain to the jury the necessity of a finding that he was a "bailee" or "agent" of the complaining witness, as charged in the indictment, and as those terms are used in the statutory definition of the offense. N.J.S. 2A:102-5. Undoubtedly it is mandatory for a trial judge to instruct the jury in the basic principles controlling the issue of defendant's guilt, particularly as to the definition of the crime charged against him. State v. Butler, 27 N.J. 560, 595 (1958). "Whether, in the absence of objection, such failure constitutes plain error, would depend upon the circumstances of the particular case." Ibid. In the present case we find no plain error. The definition of the crime by the trial court was as follows:
"The crime of embezzlement arises out of a breach of trust. It is theft by a person false to his trust. In essence, embezzlement is stealing by a person who came into possession without the trespass necessary in larceny. Embezzlement may be broadly defined as the fraudulent conversion of the money or property of another by one to whom it has been entrusted. The fraudulent appropriation to one's self by a breach of trust of the money or property of another. In its broad aspect, embezzlement is an intentional and fraudulent appropriation or misapplication of money or property belonging to another by a person entrusted therewith. To embezzle means fraudulently to appropriate the money or property of another to one's own use."
*333 Defendant never seriously contended at the trial that if Miss Rocky's testimony were taken at its face value he was not her bailee or agent to safeguard the money entrusted to him. He was not prejudiced in relation to the omission in the charge of the technical definition of an agent or bailee as he made no factual issue at trial concerning the absence of any legally material aspect of either of such relationships. The charge was an entirely fair exposition of the law. State v. Bobbins, supra (35 N.J. Super., at p. 497). If defendant was entrusted by Miss Rocky with her money to keep it for her in "her fund," he was her bailee or agent in respect of the funds for that purpose.
It is further urged that the court erred in charging the jury as to the "false as to one matter  false as to all" maxim of credibility. The asserted defect is the omission in the charge of the word "material" in relation to the subject matter of the assumed false testimony. Coleman v. Public Service Co-ordinated Transport, 120 N.J.L. 384 (Sup. Ct. 1938). There was no resulting substantial injustice here. Practically all of defendant's testimony was material in that it went, directly or indirectly, to refute the State's proofs in support of the basic charge that he received Miss Rocky's money, and converted it with criminal or fraudulent intent. The rationale of the rule, moreover, would seem to extend to any testimony a defendant regards as material to his innocence or guilt or to the incriminatory character of the proofs he seeks to refute. Substantially all of defendant's testimony would seem to have been in that category. A reversal will not be lightly granted on this ground where no effort is made at trial to secure a correction of the charge in the respect claimed to be faulty. See State v. D'Ippolito, 22 N.J. 318, 325 (1956).
Defendant also complains that the court did not charge his request that "Fraudulent intent to convert the money or property of another is an essential element of embezzlement, and that intent must be proved beyond a reasonable doubt," citing State v. Woodward, 99 N.J.L. 49 (Sup. Ct. *334 1923). We find the essentials of these principles in the charge, reading it as a whole, although not in the form or with the assignment of emphasis in the quoted request. In the absence of an objection to the failure to so charge, we find no real injustice in the omission to charge exactly as requested.
We have carefully considered various other grounds of appeal argued and find them without merit. Defendant has had an eminently fair trial and was unexceptionably convicted of the charge laid in the indictment.
Affirmed.